# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE SERIES 7 BROKER
QUALIFICATION EXAM SCORING
LITIGATION

MISC. ACTION NO. 06-355(JDB)
MDL DOCKET NO. 1772

THIS DOCUMENT RELATES TO:
ALL CASES

## DEFENDANT ELECTRONIC DATA SYSTEMS CORPORATION'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS THE
## CONSOLIDATED CLASS ACTION COMPLAINT

James P. Karen
Joshua S. Roseman
JONES DAY
2727 North Harwood Street
Dallas, TX 75201
Tel: (214) 220-3939
Fax: (214) 969-5100

James E. Gauch
Robert H. Klonoff
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700

*Attorneys for Defendant
Electronic Data Systems Corporation*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...............................................................................................ii

INTRODUCTION .............................................................................................................1

STATEMENT OF FACTS..................................................................................................2

STANDARD OF REVIEW AND CHOICE OF LAW .....................................................4

ARGUMENT .....................................................................................................................6

I.     EDS Is Absolutely Immune For Its Actions Taken In Furtherance Of
       NASD's Performance Of Its Regulatory Functions (All Counts) ...................6

       A.     NASD Is Absolutely Immune From Suit When Administering the
              Series 7 Exam .........................................................................................6

       B.     EDS Is Absolutely Immune From Suit For Performance Of Those
              Functions Delegated To It By NASD In Furtherance Of NASD's
              Regulatory Functions .............................................................................8

II.    Plaintiffs Waived Any Potential Claims Against EDS When They Registered
       For The Series 7 Exam  (All Counts)............................................................. 12

III.   Plaintiffs' Breach of Contract Claim Also Fails Because They Are Not Third-
       Party Beneficiaries Of EDS' Services Agreement With NASD (Count II) ............... 15

IV.    Plaintiffs' Negligence and Negligent Representation Claims Fail to State a
       Claim Under the Law of Any Relevant State (Counts III and IV) ............................ 16

       A.     Plaintiffs' Negligence Claims Fail Because Plaintiffs Have Not Pled a
              Duty Owed to Them by EDS and Because the Economic Loss
              Doctrine Bars Recovery in Negligence for Purely Economic Injuries
              (Count III) ........................................................................................... 17

       B.     Plaintiffs Fail To State A Claim For Negligent Misrepresentation
              Under Any State Law (Count IV) ......................................................... 21

CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Alicke v. MCI Comm'ns Corp.,*
111 F.3d 909 (D.C. Cir. 1997) ...................................................................22

*Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt. Ltd.,*
364 F.3d 884 (7th Cir. 2004) ....................................................................15

*Anderson v. USAA Cas. Ins. Co.,*
221 F.R.D. 250 (D.D.C. 2004) .................................................................23

*Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.,*
757 F.2d 676 (5th Cir. 1985) ......................................................................6

*Barbara v. N.Y. Stock Exch., Inc.,*
99 F.3d 49 (2d Cir. 1996) .......................................................................7, 8

*Barr v. Matteo,*
360 U.S. 564 (1959) ..................................................................................10

*Blair v. Scott Specialty Gases,*
283 F.3d 595 (3d Cir. 2002) ......................................................................14

*Browning v. Clinton,*
292 F.3d 235 (D.C. Cir. 2002) .........................................................4, 13, 22

*Conway v. Icahn & Co.,*
16 F.3d 504 (2d Cir. 1994) ........................................................................15

*D'Alessio v. N.Y. Stock Exch., Inc.,*
258 F.3d 93 (2d Cir. 2001) ..........................................................................6

*\*DL Capital Group, LLC v. Nasdaq Stock Market, Inc.,*
409 F.3d 93 (2d Cir. 2005) ....................................................................1, 8, 9

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,*
2 F. Supp. 2d 516 (S.D.N.Y. 1998), *aff'd*, 191 F.3d 198 (2d Cir. 1999)....................7, 14

*\*Dexter v. Depository Trust & Clearing Corp.,*
406 F. Supp. 2d 260 (S.D.N.Y. 2005) ...................................................1, 8, 9, 12

Principal cases relied upon are designated by an asterix.

# TABLE OF AUTHORITIES

(continued)

Page

*Doe v. State of Israel*,
    400 F. Supp. 2d 86 (D.D.C. 2005) ...................................................................................4

*In re Donald J. Trump Casino Sec. Litig.*,
    7 F.3d 357 (3d Cir. 1993) ..............................................................................................5

*EEOC v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) ............................................................................... 11, 12

*Factory Mkt., Inc. v. Schuller Int'l, Inc.*,
    987 F. Supp. 387 (E.D. Pa. 1998) .................................................................................18

*Gaubert v. Gray*,
    747 F. Supp. 40 (D.D.C. 1995) ......................................................................................5

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ............................................................................................... 13, 14

*Harris v. Nat'l Evaluation Sys.*,
    719 F. Supp. 1081 (N.D. Ga. 1989), *aff'd*, 900 F.2d 266 (11th Cir. 1990).....................14

*India.com, Inc. v. Dalal*,
    412 F.3d 315 (2d Cir. 2005) .........................................................................................16

*Kingman Park Civic Ass'n v. Williams*,
    348 F.3d 1033 (D.C. Cir. 2003) .....................................................................................4

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
    829 F.2d 1171 (D.C. Cir. 1987), *aff'd*, 490 U.S. 122 (1989).................................. 5, 6, 16

*Koveleskie v. SBC Capital Markets, Inc.*,
    167 F.3d 361 (7th Cir. 1999).......................................................................................14

*Kramer v. Time-Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991) ........................................................................................12

*Kwoun v. S.E. Mo. Prof'l Standards Review Org.*,
    811 F.2d 401 (8th Cir. 1987)........................................................................................10

# TABLE OF AUTHORITIES
(continued)

**Page**

*Mangold v. Analytic Servs., Inc.,*
  77 F.3d 1442 (4th Cir. 1996) .......................................................................... 10, 11

*Milanovich v. Costa Crociere, S.p.A.,*
  954 F.2d 763 (D.C. Cir. 1992) ............................................................................. 15

*Miller v. U.S. Steel Corp.,*
  902 F.2d 573 (7th Cir. 1990) .............................................................................. 20

*Morse/Diesel, Inc. v. Trinity Indus., Inc.,*
  859 F.2d 242 (2d Cir. 1988) ............................................................................... 16

*Murray v. Northrop Grumman Info. Tech., Inc.,*
  444 F.3d 169 (2d Cir. 2006) ............................................................................... 10

*Nelson v. Nationwide Mortgage Corp.,*
  659 F. Supp. 611 (D.D.C. 1987) ......................................................................... 23

*P'ship Exch. Sec. Co. v. Nat'l Ass'n of Sec. Dealers, Inc.,*
  169 F.3d 606 (9th Cir. 1999) ............................................................................... 6

*Pani v. Empire Blue Cross Blue Shield,*
  152 F.3d 67 (2d Cir. 1998) ................................................................................. 10

*Penn. State Employees Credit Union v. Fifth Third Bank,*
  398 F. Supp. 2d 317 (M.D. Pa. 2005) ................................................................. 19

*Potomac Plaza Terraces, Inc. v. QSC Prods., Inc.,*
  868 F. Supp. 346 (D.D.C. 1994) ......................................................................... 19

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  170 F.3d 1 (1st Cir. 1999) .................................................................................. 14

*\*Scher v. Nat'l Ass'n of Sec. Dealers, Inc.,*
  386 F. Supp. 2d 402 (S.D.N.Y. 2005) .................................................................. 8

*Seus v. John Nuveen & Co., Inc.,*
  146 F.3d 175 (3d Cir. 1998) ............................................................................... 14

*Simpson v. Socialist People's Libyan Arab Jamahiriya,*
  180 F. Supp. 2d 78 (D.D.C. 2001) ...................................................................... 23

# TABLE OF AUTHORITIES
(continued)

**Page**

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.,*
  159 F.3d 1209 (9th Cir. 1998)......................................................................2, 6

*Towers Tenant Ass'n, Inc. v. Towers Ltd. P'ship,*
  563 F. Supp. 566 (D.D.C. 1983) ....................................................................18

*In re U.S. Office Prods. Co. Sec. Litig.,*
  251 F. Supp. 2d 77 (D.D.C. 2003) ..................................................................23

*Vanover v. Hantman,*
  77 F. Supp. 2d 91 (D.D.C. 1999), *aff'd,* 38 F. App'x 4 (D.C. Cir. 2002) ...................3, 15

*Zandford v. Nat'l Ass'n of Sec. Dealers, Inc.,*
  30 F. Supp. 2d 1 (D.D.C. 1998) ..................................................................7, 9

## STATE CASES

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.,*
  750 N.E.2d 1097 (N.Y. 2001) ........................................................................20

*Aikens v. Baltimore & Ohio R.R. Co.,*
  501 A.2d 277 (Pa. Super. Ct. 1985) ................................................................20

*Bilt-Rite Contractors, Inc. v. Architectural Studio,*
  866 A.2d 270 (Pa. 2005) ..............................................................................22

*Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.,*
  835 N.E.2d 701 (Ohio 2005) ........................................................................19

*Delman v. City of Cleveland,*
  534 N.E.2d 835 (Ohio 1989) ........................................................................22

*Floor Craft Floor Covering, Inc., v. Parma Comty. Gen. Hosp. Ass'n,*
  560 N.E.2d 206 (Ohio 1990) ........................................................................17

*Greenberg v. Stewart Title Guar. Co.,*
  492 N.W.2d 147 (Wis. 1992) ....................................................................18, 20

# TABLE OF AUTHORITIES
(continued)

Page

*Hou-Tex, Inc. v. Landmark Graphics,*
    26 S.W.3d 103 (Tex. App. 2000) .................................................................. 20, 21

*Ins. Co. of N. Am. v. Cease Elec., Inc.,*
    688 N.W.2d 462 (Wis. 2004) ............................................................................ 20

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,*
    991 S.W.2d 787 (Tex. 1999) .............................................................................. 22

*Meier v. Alfa-Laval, Inc.,*
    454 N.W.2d 576 (Iowa 1990) ............................................................................ 22

*N.Y. Univ. v. Cont'l Ins. Co.,*
    662 N.E.2d 763 (N.Y. 1995) .............................................................................. 17

*Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.,*
    345 N.W.2d 124 (Iowa 1984) ............................................................................ 19

*Nepco Forged Prods., Inc. v. Consol. Edison Co. of N.Y., Inc.,*
    470 N.Y.S.2d 680 (N.Y. App. Div. 1984) ..................................................... 15, 16

*Preferred Mktg. Assocs. Co. v. Hawkeye Nat'l Ins. Co.,*
    452 N.W.2d 389 (Iowa 1990) ............................................................................ 18

*Quinn Cos. v. Herring-Marathon Group, Inc.,*
    773 S.W.2d 94 (Ark. 1989) .......................................................................... 18, 20

*Redmond v. State Farm Ins. Co.,*
    728 A.2d 1202 (D.C. 1999) ............................................................................... 21

*Richard A. Rosenblatt & Co. v. Davidge Data Sys. Corp.,*
    743 N.Y.S.2d 471 (N.Y. App. Div. 2002) ........................................................... 19

*S. County, Inc. v. First W. Loan Co.,*
    871 S.W.2d 325 (Ark. 1994) ............................................................................. 22

*Sommer v. Fed. Signal Corp.,*
    593 N.E.2d 1365 (N.Y. 1992) ........................................................................... 19

*Stainless, Inc. v. Employers Fire Ins. Co.,*
    418 N.Y.S.2d 76 (N.Y. App. Div. 1979), *aff'd*, 406 N.E.2d 490 (N.Y. 1980) ............... 15

TABLE OF AUTHORITIES
(continued)

Page

*Sw. Bell Tel. Co. v. DeLanney,*
    809 S.W.2d 493 (Tex. 1991) ................................................................................18

*Whipp v. Iverson,*
    168 N.W.2d 201 (Wis. 1969) .............................................................................21

## FEDERAL STATUTES

28 U.S.C. § 1407(a) ....................................................................................................... 5

## MISCELLANEOUS

*Manual for Complex Litigation Ann.* § 20.132 (4th ed. 2006) ........................................5, 6

*Multidistrict Litigation Manual* § 9:17 (2006) ..................................................................23

*Restatement (Second) of Torts* § 552 (1977) ........................................................................21

# INTRODUCTION

Defendant Electronic Data Systems Corporation ("EDS") moves to dismiss all of the claims in plaintiffs' Consolidated Complaint. Those claims stem from the National Association of Securities Dealers' ("NASD") erroneous notification that plaintiffs did not pass the Series 7 broker qualification exam. According to plaintiffs, EDS—which had a contract with NASD—was responsible for a software problem that caused the exams to be scored incorrectly. Plaintiffs' claims fail as a matter of law for numerous independent reasons:

- *First,* EDS, like NASD, is absolutely immune from suit when aiding NASD in performance of its regulatory functions delegated to it by the Securities and Exchange Commission ("SEC"). Such immunity is well supported in cases immunizing private companies providing services to NASD relating to its regulatory functions. *See, e.g., DL Capital Group, LLC v. Nasdaq Stock Mkt., Inc.,* 409 F.3d 93, 95 (2d Cir. 2005); *Dexter v. Depository Trust & Clearing Corp.,* 406 F. Supp. 2d 260, 264 (S.D.N.Y. 2005). It rests not only on sound policy but on the fact that "[i]t would be illogical to clothe NASD with absolute immunity for its regulatory decisions, and then to impose liability on [an entity] that simply carried out its functions in obedience to . . . those decisions." *Dexter,* 406 F. Supp. at 264.

- *Second,* plaintiffs expressly released any claims against EDS relating to the exam. By signing uniform securities registration Form U4, plaintiffs agreed that neither NASD "*nor any person acting on [its] behalf* shall be liable to me for action taken or omitted to be taken in official capacity" and plaintiffs also "release[d] [NASD] . . . *and any person acting on [its] behalf* from any and all liability of whatever nature by reason of furnishing . . . information" about the individual to any employer or prospective employer. Rev. Form U4 (10/2005), §§ 15A.3, 15A.4 (emphasis added) (attached as Ex. A to the Declaration of James E. Gauch (hereinafter "Gauch Decl.")). These releases indisputably bar plaintiffs' claims here.

- *Third,* plaintiffs' claim for breach of contract (Count II)—premised on their asserted status as third-party beneficiaries of the Information Technology Services Agreement ("Services Agreement") between NASD and EDS—fails because under the express terms of that agreement, "[e]ach Party intends that

this Agreement shall not benefit, or create any right or cause of action in or on behalf of, any person or entity other than EDS or NASD." Services Agreement, Art. 29.13, p. 58 (Gauch Decl., Ex. B).[1]

- *Fourth,* plaintiffs' negligence claim (Count III) fails because (1) EDS had no independent duty of care to plaintiffs; and (2) the purely economic loss they have pled is not cognizable under state tort law.

- *Fifth*, plaintiffs' negligent misrepresentation claim (Count IV) fails because plaintiffs plead no facts to suggest that EDS made any representation whatsoever to plaintiffs or their employers.

## STATEMENT OF FACTS

This putative class action litigation arises out of an error in scoring NASD's Series 7 broker qualification exam.[2]  That exam was taken by a limited number of individuals, including plaintiffs, who took the exam between October 1, 2004 and December 20, 2005. Compl. ¶¶ 1, 23.  That exam is "an entry-level examination . . . that qualifies individuals for registration with all self-regulatory organizations for the solicitation, purchase, and/or sale of all securities products."  *Id.* ¶ 11.  No individual may engage in such activities without passing the exam.  *Id.* ¶ 12.  "In order to take the Series 7 examination, an individual's employer must submit a Form U4," which is signed by the applicant.  *Id.* ¶ 13.  Among other

---

[1] A copy of the pertinent provisions of the Services Agreement is excerpted in Exhibit B.  A copy of the Services Agreement will be provided to plaintiffs upon entry of a protective order.

[2] NASD is a self-regulatory organization of securities firms [that] regulates the securities markets and ensures that member firms abide by the rules of NASD, as well as federal and state securities laws and regulations.  Compl. ¶ 8.  As such, it is registered pursuant to the Maloney Act amendments to the Securities Exchange Act of 1934.  NASD "supervises the conduct of its members under the general aegis of the SEC," and thus serves as "the primary regulatory body" for the securities dealers and brokers industry.  *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1210 (9th Cir. 1998).

things, Form U4 provides for an express release of liability for certain claims, including those made here. *See* pp. 12-14, *infra*.

Of the 60,500 individuals who took the exam during the class period, approximately 1,822 were erroneously notified that they had failed the exam. Compl. ¶ 20. In January 2006, NASD informed plaintiffs and the public about the erroneous results, which were due to a software glitch, and promised to take the appropriate steps to reflect that the affected test-takers were indeed qualified to act as general securities representatives. *Id.* ¶¶ 22-23 (quoting Press Release, NASD, NASD Says Software Error Impacts Series 7 Exam Results (January 6, 2006) (Gauch Decl., Ex. C)).

The scoring error arose from the computer model used to test difficulty and weight questions on the Series 7 exam. Compl. ¶ 24. Plaintiffs allege that this error was caused by EDS, *id.* at ¶¶ 20, 26, 27, a global technology services company that has a strategic alliance with NASD, *id.* at ¶¶ 9-10. Plaintiffs acknowledge that "EDS had a contractual relationship and agreements with the NASD to provide . . . software development and maintenance . . . includ[ing] developing and performing the functions relating to the automated scoring function of the Series 7 exam." *Id.* ¶ 50. That relationship is embodied in the Services Agreement.[3] Pursuant to that contract, EDS provides a wide range of services to NASD, including applications development and maintenance, Internet and intranet development, Web hosting, and distributed systems support. Among other things, the Services Agreement

---

[3] This Court may consider the Services Agreement on a motion to dismiss because the Agreement is a "document [ ] referred to in the complaint and is central to plaintiff[s'] claim" that they were third-party beneficiaries of the Agreement. *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002); *see also* Compl. ¶ 51.

provides that "[e]ach Party intends that this Agreement shall not benefit, or create any right or cause of action in or on behalf of, any person or entity other than EDS or NASD." Services Agreement, Art. 29.13, p. 58 (Gauch Decl., Ex. B).

Plaintiffs, on behalf of a class of similarly situated test-takers, filed suit against both NASD and EDS seeking damages for loss of employment, wages, and benefits caused by the initial erroneous notification. Compl. ¶ 4. Plaintiffs sue as third-party beneficiaries to the Services Agreement, an agreement they allege EDS breached by failing to accurately and reliably develop and deliver the automated scoring function of the exam. *Id.* ¶¶ 51-52. Plaintiffs further allege that EDS was negligent in its design, inspection and testing of the Series 7 software and in its scoring of the exams. *Id.* ¶ 56. Finally, plaintiffs allege that Defendants negligently misrepresented to them and their employers that they had failed the exam. *Id.* ¶ 59.

## STANDARD OF REVIEW AND CHOICE OF LAW

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (internal quotation marks omitted). Although "the Court must draw all favorable inferences in plaintiffs' favor," the Rule 12(b)(6) "standard does not mandate blind and absolute deference." *Doe v. State of Israel*, 400 F. Supp. 2d 86, 100 (D.D.C. 2005). Nor is the court required to accept "legal conclusions cast in the form of factual allegations." *Browning*, 292 F.3d at 242 (internal

quotation marks omitted). Moreover, "it is settled law that a Rule 12(b)(6) motion to dismiss may properly be granted where immunity, though technically an affirmative defense, is an issue." *Gaubert v. Gray*, 747 F. Supp. 40, 45 (D.D.C. 1995).

This Court may issue a dispositive pre-trial order terminating all of the underlying complaints in this consolidated case.[4] As the transferee court in this multidistrict litigation, this Court remands cases to transferor courts following consolidated pretrial proceedings "unless [they] shall have been previously terminated." 28 U.S.C. § 1407(a). Rule 7.6 of the Judicial Panel on Multidistrict Litigation, promulgated pursuant to § 1407, provides that such terminated actions include "judgment of dismissal." *See also In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1178 (D.C. Cir. 1987) (Ginsburg, J., concurring) ("Congress contemplated that transferred cases might never return to the transferor courts."), *aff'd*, 490 U.S. 122 (1989); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 367 (3d Cir. 1993) (holding that § 1407 "empowers transferee courts to enter a dispositive pre-trial order terminating a case"); *Manual for Complex Litigation Ann.* § 20.132, at 270 (4th ed. 2006) ("Although the transferee judge has no jurisdiction to conduct a trial in cases transferred solely for pretrial proceedings, the judge may terminate actions by ruling on motions to dismiss, for summary judgment, or pursuant to settlement.").

---

[4] Actions brought by plaintiffs Bruen, Johnson, Russo, Schley, and Wilson have been transferred to this Court, but these plaintiffs are not named in the Consolidated Complaint. *See* Compl. ¶ 7. Dismissal of the Consolidated Complaint on the grounds asserted would be binding as to *all* plaintiffs, either because they are parties to the Consolidated Complaint or because "all . . . orders addressing issues common to all [transferred] actions shall be deemed to have been entered in all such actions." Initial Scheduling Order at 1. By this motion, therefore, EDS requests dismissal of all claims by all plaintiffs.

In reviewing pleadings filed in a multidistrict litigation, this Court applies the law of this Circuit to claims arising under federal law, but gives "close consideration" to federal precedents from the transferor fora. *See In re Korean Air Lines Disaster*, 829 F.2d at 1176. For state-law claims, this Court applies the law of each state from which the cases were transferred. *Id.* at 1173; *see also Manual for Complex Litigation Ann.* § 20.132, at 270 ("In diversity cases, the law of the transferor district follows the case to the transferee district.").

## ARGUMENT

I. **EDS Is Absolutely Immune For Its Actions Taken In Furtherance Of NASD's Performance Of Its Regulatory Functions (All Counts)**

A.    *NASD Is Absolutely Immune From Suit When Administering the Series 7 Exam*

As discussed in greater detail in NASD's motion to dismiss, NASD enjoys absolute immunity from suit for its regulatory function of evaluating and monitoring the qualifications and fitness of individuals to work in the securities industry. In establishing the national securities market, Congress deliberately chose "a system of industry self-regulation with strong SEC oversight." *Sparta Surgical Corp*, 159 F.3d at 1213. Under this framework, when a self-regulatory organization ("SRO"), such as NASD, "effectively stand[s] in the shoes of the SEC," it is "entitled to the same immunity enjoyed by the SEC." *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001). Courts have therefore uniformly held that SROs, including NASD, are entitled to absolute immunity for actions taken with regard to disciplining their members. *See, e.g., P'ship Exch. Sec. Co. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 169 F.3d 606, 608 (9th Cir. 1999) (holding that NASD was absolutely immune from suit arising out of its attempt at disciplining trader for various financial improprieties); *Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676, 692 (5th Cir. 1985) ("conclud[ing]

6

[that] the NASD is entitled to absolute immunity for its role in disciplining its members and associates").

Such absolute immunity is necessary because allowing suits "arising out of the [SRO]'s disciplinary functions would clearly stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, namely, to encourage forceful self-regulation of the securities industry." *Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 59 (2d Cir. 1996) (internal quotation marks and alterations omitted). The regulatory function at issue in this case—ensuring that individuals meet certain requirements, including passing a proficiency exam, to enter the securities industry—goes hand in hand with the function of disciplining, or even removing, those registered members whose conduct has fallen below acceptable standards. The registration process is critical to maintaining the integrity of the securities market because it screens out those individuals who lack the character, knowledge, or competence to hold such an important position. *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 2 F. Supp. 2d 516, 518 (S.D.N.Y. 1998) (discussing NASD's authority "to establish standards for . . . the registration of securities professionals" who "buy and sell over-the-counter securities"), *aff'd*, 191 F.3d 198 (2d Cir. 1999); *see also Zandford v. Nat'l Ass'n of Sec. Dealers, Inc.*, 30 F. Supp. 2d 1, 17 (D.D.C. 1998) ("Congress saw fit to set up through the NASD with SEC supervision a system to protect both the regulators and the public by having the industry and all its expertise self-police the members."). Because this registration function is so critical to NASD's oversight responsibilities, NASD has absolute immunity from plaintiffs' claims.

B.    *EDS Is Absolutely Immune From Suit For Performance Of Those Functions Delegated To It By NASD In Furtherance Of NASD's Regulatory Functions*

As NASD's technology partner, EDS has the same immunity for its conduct in assisting NASD's registration functions as does NASD itself. Just as the SEC has delegated some of its regulatory functions to NASD, NASD has in turn delegated certain activities to other private entities such as EDS. Because "immunity doctrines protect private actors when they perform important governmental functions," *Barbara*, 99 F.3d at 58, EDS is entitled to immunity for its technology services in support of NASD's regulatory functions. This result is clear for three reasons.

*First*, courts have routinely recognized that private entities that act pursuant to "the core of the regulatory, investigatory, disciplinary, adjudicatory, and oversight functions delegated to the NASD" are entitled to absolute immunity. *Scher v. Nat'l Ass'n of Sec. Dealers, Inc.*, 386 F. Supp. 2d 402, 407 (S.D.N.Y. 2005); *see also DL Capital Group*, 409 F.3d at 100 n.4; *Dexter*, 406 F. Supp. 2d at 264. *Scher* addressed a suit against NASD and a not-for-profit subsidiary for damages from the successful criminal prosecution of a licensed stockbroker. *DL Capital Group* involved Nasdaq, a for-profit subsidiary of NASD, that was sued over the announcement of its decision to cancel certain trades on the Nasdaq Stock Market. And *Dexter* concerned a clearing agency unrelated to NASD charged with negligence in distributing funds from a litigation trust to the wrong parties on an ex-dividend date established by NASD. In each case, the court determined on the pleadings that the entity operating in conjunction with NASD was entitled to the same degree of absolute immunity as NASD itself.

8

In assessing the immunity of such secondary delegees, the core question is not the nature of the entity or its acts, but rather the question is whether the delegee is serving NASD's regulatory functions.  Thus, in *DL Capital Group*, where an investor sued Nasdaq for alleged fraudulent statements regarding a decision to cancel particular trades, the court held that "Nasdaq is entitled to absolute immunity to the extent that it is performing regulatory duties delegated to it by the NASD."  409 F.3d at 100 n.4.  The court rejected plaintiffs' attempt to distinguish the decision to cancel trades from the announcement of its decision.  The court also held that neither the fact that Nasdaq was a for-profit corporation nor the fact that it was not "independently registered as an SRO . . . provide[d] justification for depriving Nasdaq of absolute immunity."  *Id.*  Similarly, in *Dexter*, the court determined that immunity applied to the clearing agency's acts whether they were discretionary or "ministerial," so long as they were performed as part of accomplishing NASD's regulatory function.  *See Dexter*, 406 F. Supp. 2d at 264 (holding that clearing agency had absolute immunity from suit for distributing funds in a litigation trust, because "NASD's regulatory decisions would be meaningless unless a clearing agency such as DTC carried out its directives"); *cf. Zandford*, 30 F. Supp. 2d at 14 (concluding that this Court could not "selectively grant immunity" to NASD's local district disciplinary committee but deny it to staff members who served as the committee's "eyes and ears").

As in those cases, the services EDS provides to NASD directly support NASD's core regulatory functions and therefore EDS should be afforded the same immunity.  *See* Compl. ¶¶ 10, 50 (describing NASD's outsourcing of technology functions to EDS, including "developing and performing the functions relating to the automated scoring function of the

Series 7 exam"). EDS' technology services, which include applications development and maintenance, critically aid NASD in performing its regulatory functions, including registration and oversight of the qualifications of individuals seeking to work in the securities industry. Under these circumstances, it would be illogical and unsound to accord NASD immunity for its regulatory activities, but then impose liability on its agent, EDS.

*Second,* affording absolute immunity to private actors aiding SROs in their delegated regulatory functions finds additional support in cases outside the securities industry. It is well-settled that "[t]he complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions." *Barr v. Matteo*, 360 U.S. 564, 573 (1959). And the courts "cannot say that these functions become less important simply because they are exercised . . . by private contractors." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 73 (2d Cir. 1998) (internal quotation marks omitted). Accordingly, "[i]f absolute immunity protects a particular governmental function . . . it is a small step to protect that function when delegated to private contractors." *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1447-48 (4th Cir. 1996). Courts have reached this result in a variety of settings. *See, e.g., Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 176 (2d Cir. 2006) (holding that firm that administered government jobs program for Irish youth was immune from suit for certain communications with the government in the course of its work); *Pani*, 152 F.3d at 74 (private Medicare carrier enjoyed official governmental immunity for its investigation of potential Medicare fraud); *Mangold*, 77 F.3d at 1447 (private firm that cooperated with Air Force investigation of contracting irregularities was immune); *Kwoun v. S.E. Mo. Prof'l Standards Review Org.*, 811 F.2d

401, 408 (8th Cir. 1987) (independent medical peer review group that reviewed conduct of physician participating in Medicare program enjoyed immunity from suit by plaintiff excluded from program).

*Third,* sound public policy dictates that EDS have the same immunity here as does NASD.  If EDS were subject to liability to third parties for its acts or omissions in performing its technology services agreement with NASD, EDS and other private contractors would be less willing to incur the risks associated with such a contract.  This would, in turn, require NASD to dedicate its limited resources to actual delivery of technology services, when those resources would be better spent on other areas.  Indeed, NASD characterized its strategic alliance with EDS as an ideal "marriage of the NASD's knowledge of the markets and leadership in regulatory technology with EDS' proven track record for delivery and technical leadership."  Press Release, NASD, NASD Announces Agreement-in-Principle with EDS to Create NasTech Alliance (October 19, 1998) (Gauch Decl., Ex. D).[5]  Thus, "to allow such tort liability . . . against . . . private contractors" in the present case "would tend to make [regulation] less efficient."  *Mangold*, 77 F.3d at 1447.  The "significant cost efficiencies" anticipated under the Agreement, *see* Gauch Decl., Ex.D, would be reduced or even disappear.

Moreover, if EDS were to remain as a defendant in this lawsuit (or others like it), NASD would necessarily continue to be burdened by, for example, requests for discovery and other demands of litigation.  Furthermore, if damages were awarded against EDS,

---

[5] This press release was also referenced in the complaint (¶ 10) and may be considered by the Court.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

NASD would face the prospect of indemnification. Thus, given the extent to which NASD delegates various programs and services to other entities to fulfill its regulatory and oversight functions, if those entities were not immune, NASD's immunity would, as a practical matter, be meaningless. As the *Dexter* court explained, "[i]t would be illogical to clothe the NASD with absolute immunity for its regulatory decisions, and then to impose liability on [an independent entity] that simply carried out its functions in obedience to . . . those decisions." 406 F. Supp. 2d at 264.

In sum, EDS is entitled to absolute immunity for any and all actions it took to aid NASD in the fulfillment of NASD's regulatory functions. Plaintiffs' complaint must therefore be dismissed in its entirety.

## II.    Plaintiffs Waived Any Potential Claims Against EDS When They Registered For The Series 7 Exam (All Counts)

Plaintiffs' claims also fail because they expressly waived and released all claims against EDS by signing the registration form, known as Form U4.[6]  Plaintiffs' complaint itself admits that "[i]n order to take the Series 7 examination, an individual's employer must submit a Form U4." Compl. ¶ 13. That form expressly states that applicants

> agree that neither the . . . *SROs* **nor any person acting on their behalf shall be liable to me** for action taken or omitted to be taken in official capacity or in the scope of employment, except as otherwise provided in the statutes, constitutions, certificates

---

[6] This Court may consider the Form U4 on a motion to dismiss because "any documents . . . incorporated in the complaint" may be used "in determining whether a complaint fails to state a claim. *See EEOC*, 117 F.3d at 624. Moreover, the court may take judicial notice of the Form U4 because it was promulgated pursuant to the SRO rulemaking process. *See, e.g., Kramer v. Time-Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of documents required by law to be filed with the SEC because "no serious question as to their authenticity can exist").

> of incorporation, by-laws or the rules and regulations of the . . .
> *SROs.*"

Rev. Form U4 (10/2005), § 15A.3 (boldface added).  Applicants further

> authorize the . . . *SROs*, and the *designated entity* to give any
> information they may have concerning me to any employer or
> prospective employer . . . and [ ] **release** the . . . *SROs* . . . and
> **any person acting on their behalf from any and all liability**
> of whatever nature by reason of furnishing such information.

*Id.* at § 15A.4 (boldface added).[7]  Because EDS is a "person acting on [NASD's] behalf,"

plaintiffs have, under the plain language of the Form U4, waived and released all claims

against EDS.

Plaintiffs argue in the Consolidated Complaint that the Form U4 constitutes an

unenforceable "adhesion contract."  *See* Compl. ¶¶ 14-16.[8]  This argument is patently

meritless.  Numerous courts, including the U.S. Supreme Court, have rejected such

arguments directed at Form U4's arbitration provisions as applied against applicants.  In

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), for example, the Supreme Court

found that Form U4 formed a contract between the applicant and "the securities

exchange[ ]," *id.* at 25 n.2, and determined that the mandatory arbitration clause (Rev. Form

U4, § 15.5) was enforceable.  The Court expressly rejected the notion of unconscionably

unequal bargaining power because there was "no indication . . . that [plaintiff], an

---

[7] The italicization of "SRO" indicates that it is a term defined in the Instructions (see
Gauch Decl., Ex. A), to include "any national securities association," *e.g.*, NASD.

[8] This Court need not accept as true plaintiffs' contentions that the Form U4 is a
contract of adhesion, because these contentions are nothing more than "legal conclusions
cast in the form of factual allegations."  *Browning*, 292 F.3d at 242.

experienced businessman, was coerced or defrauded into agreeing to the arbitration clause in his registration application." *Gilmer*, 500 U.S. at 33.

The courts of appeals, in numerous cases involving arbitration, have likewise adhered to this fundamental principle. *See, e.g., Desiderio*, 191 F.3d at 207 ("[Form U-4] is not a contract of adhesion."); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 366 (7th Cir. 1999) (holding that in the absence of fraud, misconduct or wrongdoing, there was no reason to invalidate this contract [Form U4] for unconscionability); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 17 (1st Cir. 1999) (same); *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 184 (3d Cir. 1998), *abrogated on other grounds*, *Blair v. Scott Specialty Gases*, 283 F.3d 595, 599-602 (3d Cir. 2002) (opining that even if the court assumed that Form U4 was a contract of adhesion it would not be unenforceable because its terms "were neither oppressive nor unconscionable"). There is no basis to depart from this principle here.

Because the release in Form U4 is valid and enforceable, all of plaintiffs' claims against EDS must be dismissed. *See, e.g., Harris v. Nat'l Evaluation Sys.*, 719 F. Supp. 1081, 1082-83 (N.D. Ga. 1989) (holding that examinee's signed release in exam registration form foreclosed examinee's negligence claim against testing service for errors in scoring her exam), *aff'd*, 900 F.2d 266 (11th Cir. 1990).

### III.    Plaintiffs' Breach of Contract Claim Also Fails Because They Are Not Third-Party Beneficiaries Of EDS' Services Agreement With NASD (Count II)

Plaintiffs sue for breach of contract on the ground that they "were the intended third-party beneficiaries of the agreement between the NASD and EDS." Compl. ¶ 51. Yet the agreement itself expressly states that "[e]ach Party intends that this Agreement shall not benefit, or create any right or cause of action in or on behalf of, *any person or entity other than EDS or NASD*." Services Agreement, Art. 29.13, p. 58 (emphasis added) (Gauch Decl., Ex. B).[9] Because that provision squarely negates plaintiffs' third-party beneficiary claim, Count II against EDS must be dismissed.

It is settled law that "[a] third party claiming to be a beneficiary of a contract must demonstrate that the parties to the contract intended at the time of contracting to confer the benefit claimed." *Conway v. Icahn & Co.*, 16 F.3d 504, 509 (2d Cir. 1994).[10] That "intention to benefit the third party must appear from the four corners of the instrument." *Stainless, Inc. v. Employers Fire Ins. Co.*, 418 N.Y.S.2d 76, 80 (N.Y. App. Div. 1979), *aff'd*, 406 N.E.2d 490 (N.Y. 1980); *see also Nepco Forged Prods., Inc. v. Consol. Edison Co. of N.Y., Inc.*, 470 N.Y.S.2d 680, 681 (N.Y. App. Div. 1984) ("[T]he best evidence of whether contracting parties intended their contract to benefit third parties remains the language of the contract itself.").

---

[9] This Court may consider the terms of a contract in ruling on a motion to dismiss when the claim arises under that contract. *See Vanover*, 77 F. Supp. 2d at 98.

[10] The Services Agreement between NASD and EDS provides that it is to be governed by New York law. Services Agreement, Art. 29.14, p. 58 (Gauch Decl., Ex. B). Such a choice of law binds plaintiffs claiming to being third-party beneficiaries. *See, e.g., Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt. Ltd.*, 364 F.3d 884, 890 (7th Cir. 2004) ("[i]nsofar as the plaintiff's third-party beneficiary claim is concerned, the plaintiff is indeed bound by the choice of law . . . clause [] in the contract"); *cf. Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 767 (D.C. Cir. 1992) (honoring contractual choice-of-law provision in case involving a form contract).

Accordingly, "[w]here a provision exists in an agreement expressly negating an intent to permit enforcement by third parties, . . . *that provision is decisive*." *Nepco Forged Prods.*, 470 N.Y.S.2d at 681 (emphasis added). *Accord, e.g., India.com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005) (holding that the negating clause entitled "no third party beneficiaries" in the stock purchase agreement "specifically foreclosed the theory on which the [defendant] . . . relied"); *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242, 249 (2d Cir. 1988) ("Under New York law, where a provision in a contract expressly negates enforcement by third parties, that provision is *controlling*.") (emphasis added). There can be no doubt that the Services Agreement provision is clear. In *India.com*, the Second Circuit examined nearly identical language in a stock purchase agreement, which provided that "[n]either this Agreement or any provision hereof . . . is intended to create any right, claim or remedy in favor of any person or entity, other than the parties hereto." 412 F.3d at 318. Relying on extensive New York authority regarding negating clauses, the court rejected a non-party's third-party beneficiary claim under the agreement because "the parties . . . [were] explicit that they did not intend to create third-party beneficiaries." *Id.* at 321-22. Likewise, the Services Agreement here is "decisive," *Nepco Forged Prods.*, 470 N.Y.S.2d at 681, and "controlling." *Morse/Diesel*, 859 F.2d at 249. Accordingly, for this reason as well, plaintiffs' breach of contract claim should be dismissed.

## IV.    Plaintiffs' Negligence and Negligent Representation Claims Fail to State a Claim Under the Law of Any Relevant State (Counts III and IV)

Plaintiffs' negligence and negligent misrepresentation claims arise under state law, and thus must be analyzed according to the laws of the states of the transferor fora. *See In re Korean Air Lines Disaster*, 829 F.2d at 1173-74. To date, the complaints consolidated in this

action were transferred from federal district courts in Arkansas, Iowa, New York, Ohio, Pennsylvania, Texas, Wisconsin and the District of Columbia.[11]  Although there is substantial variation among these state laws, plaintiffs' negligence and negligent misrepresentation claims fail to state a claim against EDS under fundamental principles applicable in *all* of the relevant jurisdictions.

A.    *Plaintiffs' Negligence Claims Fail Because Plaintiffs Have Not Pled a Duty Owed to Them by EDS and Because the Economic Loss Doctrine Bars Recovery in Negligence for Purely Economic Injuries (Count III)*

Plaintiffs' claim premised on negligence fails for two related reasons:  (1) they have failed to plead any duty of care owed to them by EDS; and (2) they seek to recover for purely economic losses that are not cognizable in a negligence claim.

*First*, plaintiffs have identified no duty of care that EDS owed to them.  The duty of care is a fundamental element of any negligence claim.  Although "the law of torts is well-equipped to offer redress for losses suffered by reason of a breach of some duty imposed by law to protect the broad interests of social policy," it was "not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement, . . . [which] remains the particular province of the law of contracts."  *Floor Craft Floor Covering, Inc., v. Parma Cmty. Gen. Hosp. Ass'n*, 560 N.E.2d 206, 211 (Ohio 1990) (internal quotation marks omitted).  Therefore, a "defendant may be liable in tort when it has breached a duty of reasonable care *distinct* from its contractual obligations, or when it has engaged in tortuous conduct *separate and apart from* its failure to fulfill its contractual obligations."  *N.Y. Univ. v.*

---

[11] Texas and the District of Columbia are also the states where EDS and NASD, respectively, have their principal places of business.

*Cont'l Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995) (emphasis added); *see also Greenberg v. Stewart Title Guar. Co.*, 492 N.W.2d 147, 151-52 (Wis. 1992) (agreeing that "in order for a cause of action to arise in tort in a contractual setting, the plaintiff must show an assumption of a duty that exists independent of the contract").[12]

Here, plaintiffs' negligence claim against EDS is based on EDS' asserted "[f]ail[ure] to properly design, manufacture, assemble, inspect and test the software used to score Series 7 exams."[13]  Compl. ¶ 56(a).  Their complaint, however, fails to identify any duty EDS owed to anyone in this respect apart from those duties embodied in EDS' Services Agreement with NASD.  Instead, they merely plead that Defendants "[f]ail[ed] to exercise due care to ensure that individuals do not receive erroneous test results."  *Id.* at ¶ 56(d).  This "duty" arises, if at all, between NASD and EDS by operation of their contract.  Plaintiffs' attempt to convert that contractual obligation into a broader tort obligation is legally flawed:

---

[12] This principle, although phrased in various ways, is followed in all relevant jurisdictions.  *See also Factory Mkt., Inc. v. Schuller Int'l, Inc.*, 987 F. Supp. 387, 394 (E.D. Pa. 1998) (holding that under Pennsylvania law "for a claim to be construed as a tort action, the wrong ascribed to the defendant must be the gist of the action with the contract being collateral") (internal quotation marks omitted); *Towers Tenant Ass'n, Inc. v. Towers Ltd. P'ship*, 563 F. Supp. 566, 570 (D.D.C. 1983) ("[M]ere negligent breach of a contract, absent a duty or obligation imposed by law independent of [the contract], is not enough to sustain an action in tort."); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (following principle that tort obligations are duties imposed by law apart and independent from promises made in agreements); *Preferred Mktg. Assocs. Co. v. Hawkeye Nat'l Ins. Co.*, 452 N.W.2d 389, 397 (Iowa 1990) ("Only where a duty recognized by the law of torts exists between the plaintiff and defendant distinct from a duty imposed by the contract will a tort action lie for conduct in breach of the contract."); *Quinn Cos. v. Herring-Marathon Group, Inc.*, 773 S.W.2d 94, 95 (Ark. 1989) ("[A] breach of contract is not a tort.").

[13] Plaintiffs' separate allegation that Defendants "fail[ed] to properly score the Series 7 exam," Compl. ¶ 56(b), falls within this overall allegation regarding design, inspection, and testing of the software, because, as plaintiffs admit, scoring was performed automatically by the software.  *See id.* at ¶ 18.

"[M]erely alleging that the breach of contract duty arose from a lack of due care will not transform a simple breach of contract into a tort." *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992). Because any such duties arise solely out of the Services Agreement and are not independently imposed by law, they cannot support a negligence claim. *See, e.g., Richard A. Rosenblatt & Co. v. Davidge Data Sys. Corp.*, 743 N.Y.S.2d 471, 472 (N.Y. App. Div. 2002) (dismissing negligence claim because there was no duty in tort distinct from parties' contract for installation and servicing of computerized securities trading system).

*Second,* plaintiffs' negligence claim fails because the economic loss doctrine bars recovery in negligence for purely economic injuries – such as the loss of wages and employment benefits claimed here, Compl. ¶ 4 – as contrasted with personal injury or property damage. To maintain the fundamental distinction between tort law and contract law, the common law recognizes this "well-established general rule . . . that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984). *See also Penn. State Employees Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 327 (M.D. Pa. 2005) (citing extensive line of Pennsylvania authority "bar[ring] negligence claims seeking recovery for economic damages or losses unless there has also been physical injury either to person or property"); *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005) ("The economic-loss rule generally prevents recovery in tort of damages for purely economic loss.").[14]

---

[14] As this Court observed in adopting the economic loss rule for the District of Columbia, "a majority of other jurisdictions rejects claims for economic loss based on negligence." *Potomac Plaza Terraces, Inc. v. QSC Prods., Inc.*, 868 F. Supp. 346, 354 (D.D.C.

The economic loss doctrine rests on the same principles as the concept of duty. Where a plaintiff suffers only economic damages, "the economic loss rule precludes any duty in tort." *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 107 (Tex. App. 2000). The common law recognizes that liability for such losses "ought to be resolved under principles of commercial law rather than according to tort principles designed for accidents that cause personal injury or property damage." *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 575 (7th Cir. 1990) (Posner, J.). As a matter of public policy, to allow such a cause of action "would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action. Such an outstanding burden is clearly inappropriate and a danger to our economic system." *Aikens v. Baltimore & Ohio R.R. Co.*, 501 A.2d 277, 279 (Pa. Super. Ct. 1985).

The Texas Court of Appeals' decision in *Hou-Tex, Inc.*, is illustrative. There, an oil and gas company entered into a contract with a surveyor, who in turn used a computer software program to interpret seismic data. Due to a software error, the company was led to drill a well in the wrong place. Hou-Tex sought to recover the expenses of the misplaced well from the software developer but, because it was not in privity with the developer, it proceeded on a negligence theory. The Court of Appeals rejected the attempt. It held that

---

1994). In addition to the cases discussed in the text, *see also 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1103 (N.Y. 2001) (dismissing plaintiffs' "negligence claims based on economic loss alone"). Although Arkansas has not addressed the economic loss doctrine, and Wisconsin limits its application to defective products, *see Ins. Co. of N. Am. v. Cease Elec., Inc.*, 688 N.W.2d 462, 472 (Wis. 2004), plaintiffs' negligence claims fail in these states because EDS has no duty to plaintiffs independent of its contract with NASD. *See Quinn Cos.*, 773 S.W.2d at 433; *Greenberg*, 492 N.W.2d at 495. Indeed, given the prevailing approach, Arkansas would likely adopt the economic loss doctrine if faced with the question.

the economic loss rule barred Hou-Tex's claim, and explained that permitting the suit would "disrupt the risk allocations that Hou-Tex worked out in its contract with [the surveyor] and the risk allocations" in the software developer's agreements with its licensees. 26 S.W.3d at 107.

The same is true here. The underlying relationships and obligations are founded in contracts. Plaintiffs had a contract (the Form U4) with NASD for registration as securities brokers. NASD had a separate and independent Services Agreement with EDS for information technology services. Each contract carefully circumscribed the relationships of the parties and, in the case of the Services Agreement, addressed the rights of non-parties. In doing so, all parties, including plaintiffs, defined their relative economic risks. The economic loss rule thus bars them from retroactively reallocating those risks under the guise of tort law.

For both reasons, plaintiffs' negligence claim against EDS should be dismissed.

B.     *Plaintiffs Fail To State A Claim For Negligent Misrepresentation Under Any State Law (Count IV)*

Plaintiffs' claim must fail as a matter of law because EDS is not alleged to have made any specific representations to plaintiffs, their employers, or anyone else. All states relevant here (except Arkansas) recognize a tort of negligent misrepresentation and require, at a minimum, a "statement" or "representation" made by the putative defendant.[15] Plaintiffs

---

[15] *See, e.g., Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999) (stating that plaintiff must show that the defendant "made a false statement"); *Whipp v. Iverson*, 168 N.W.2d 201, 203 (Wis. 1969) (explaining that negligent misrepresentation starts with a "representation . . . of a fact . . . made by defendant [that] must be untrue"); *see also* Restatement (Second) of Torts § 552 (1977) (defining the tort to apply to the "suppl[ying of] false information for the guidance of others"). Several states relevant here follow the

fail to plead how EDS made such a statement or representation to them. Their complaint alleges that it was NASD that "administers tests related to securities broker licensing," *id.* ¶ 8, and that NASD "notif[ied]" individuals about their scores. *Id.* ¶ 23. The crux of their claim against EDS, on the other hand, relates exclusively to the alleged software coding error committed by EDS, *id.* ¶ 26-27, and plaintiffs' theories about what quality control steps EDS allegedly failed to take in software maintenance. *Id.* ¶ 30. Such allegations about deficient software programming are wholly unrelated to plaintiffs' claim that "Defendants recklessly or negligently misrepresented to Plaintiffs and Class Members, and their employers that they had failed the Series 7 exam." *Id.* ¶ 59. Indeed, plaintiffs' complaint is devoid of *any* allegation of any specific misrepresentation that EDS made either to any plaintiff or to any of plaintiffs' employers.[16]

This pleading defect dooms plaintiffs' complaint even under the liberal standards of Rule 8 of the Federal Rules of Civil Procedure. *See, e.g., Alicke v. MCI Comm'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (affirming Rule 12(b)(6) dismissal of negligent misrepresentation claim because plaintiff did not "adequately allege all the elements

---

Restatement. *See, e.g., Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 287 (Pa. 2005); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Texas 1999); *Meier v. Alfa-Laval, Inc.*, 454 N.W.2d 576, 581 (Iowa 1990); *Delman v. City of Cleveland*, 534 N.E.2d 835, 838 (Ohio 1989). Arkansas has "decline[d] to recognize the tort of negligent misrepresentation." *S. County, Inc. v. First W. Loan Co.*, 871 S.W.2d 325, 326 (Ark. 1994).

[16] The only misrepresentation allegation that even conceivably applies to EDS is that "*Defendants* erroneously notified approximately 1,822 members of the Class that they had failed the Series 7." Compl. at ¶ 20 (emphasis added). As applied to EDS, however, and without additional facts, that assertion is totally conclusory and is entitled to no weight. *See, e.g., Browning*, 292 F.3d at 242 (refusing to accept "inferences . . . unsupported by the facts set out in the complaint" (internal quotation marks omitted).

necessary for . . . the cause[] of action").  Moreover, the problem is especially egregious in light of this Court's frequent insistence on particularity in negligent misrepresentation claims.[17]  *See, e.g., Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004) (dismissing negligent misrepresentation claim for failure to satisfy Rule 9(b)); *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 101 (D.D.C. 2003) ("[N]egligent misrepresentation claims, as with fraud claims, must adequately allege *all* of the required elements.") (emphasis in original); *Nelson v. Nationwide Mortgage Corp.*, 659 F. Supp. 611, 618 (D.D.C. 1987) (requiring plaintiff to allege negligent misrepresentation claim with particularity).

In *Anderson*, for example, the court dismissed a complaint that "f[ell] short of pleading any specific allegations as to defendant's . . . conduct that would support the gravamen of her claim, advancing nothing more than what appears to be a blanket belief that *the defendants as a group* 'misrepresented or withheld material and significant facts.'"  221 F.R.D. at 255 (emphasis added).  Similarly, because plaintiffs here fail to plead any facts sufficient to identify the representation allegedly made by EDS to them or their employers, plaintiffs' negligent misrepresentation claim should be dismissed.

---

[17] This Court looks to its own precedents on this issue because "procedural matters are governed by the law of the transferee court."  David F. Herr, Multidistrict Litigation Manual § 9:17, at 249 (2006).  *See also Simpson v. Socialist People's Libyan Arab Jamahiriya*, 180 F. Supp. 2d 78, 85 n.2 (D.D.C. 2001) (observing that cases from "other trial courts from within this district . . . are highly persuasive precedent").

## CONCLUSION

For all of the reasons stated above, this Court should grant EDS' Motion to Dismiss.

Respectfully submitted,

/s/ James P. Karen

James P. Karen
Joshua S. Roseman
JONES DAY
2727 North Harwood Street
Dallas, TX 75201
Tel: (214) 220-3939
Fax: (214) 969-5100

James E. Gauch
Robert H. Klonoff
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700

*Attorneys for Defendant*
*Electronic Data Systems Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of December, 2006, I caused true and correct copies of the foregoing Memorandum of Law to be served through this Court's CM/ECF system on all counsel registered with that system, and on the following counsel by U.S. mail, first class postage prepaid:

John Balestriere
BALESTRIERE PLLC
225 Broadway, Suite 2700
New York, NY 10007

*Attorney for Andrew Crabbe & Linda Cutler*

Gerald E. Martin
BARRETT, JOHNSTON & PARSLEY
217 Second Avenue North
Nashville, TN 37201

*Attorney for Jason Plunkett*

John G. Richards
DAVIS, BUCCO & ARDIZZI
10 East 6th Ave, Suite 100
Conshohocken, PA 19428

*Attorney for Mark Russo*

Joseph Tacopina
*Of Counsel*
ARTHUR L. AIDALA & ASSOCIATES, P.C.
597 Fifth Avenue
New York, NY 10017

*Attorney for James Bruen*

Frederic S. Fox
KAPLAN, FOX & KILSHEIMER, LLP
805 Third Avenue, 22nd Floor
New York, NY 10022

*Attorney for Alex Ruimerman*

William W. Graham
GRAHAM & ERVANIAN, P.C.
604 Locust Street, Suite 630
Des Moines, IA 50309

*Attorney for Christopher Wilson*

James F. Rittinger
SATTERLEE, STEPHENS, BURKE &
      BURKE
230 Park Avenue, Suite 1130
New York, NY 10169

*Attorney for the Thomson Corp. &*
      *Thomson Prometric, Inc.*

/s/ James P. Karen

James P. Karen
*Attorney for Defendant*
*Electronic Data Systems Corporation*