## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SERIES 7 BROKER QUALIFICATION EXAM SCORING LITIGATION<br><br>This Document Relates To:<br>ALL CASES | Misc. Action No. 06-355(JDB);<br>MDL Docket No. 1772 |

## PLAINTIFFS' SUR-REPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

The consolidated Plaintiffs, through their attorneys appointed liaison counsel by the Court's order of October 11, 2006, respectfully submit this sur-reply brief in opposition to the motions to dismiss filed by Defendant National Association of Securities Dealers ("NASD") and Defendant Electronic Data Systems Corporation ("EDS"). Plaintiffs respectfully submit this sur-reply brief to address a narrow set of issues raised by Defendants' reply brief arguments in support of their respective assertions of immunity. In their replies, Defendants' positions on immunity have been altered and clarified through further argument and citation to several cases not previously cited. Accordingly, Plaintiffs are in a position to offer a more directed response to Defendants' altered and clarified positions and new authorities. This brief should aid the Court in focusing on the critical issues in these motions.

## I.    INTRODUCTION

Defendants' assertions of immunity are premised on a notion that all conduct that is "regulatory" in nature is equivalent to "adjudicatory" or "prosecutorial" functions

protected by absolute immunity. A closer reading of the case originating the NASD's immunity, *Austin Municipal Securities, Inc. v. National Association of Securities Dealers, Inc.*, 757 F.2d 676 (5th Cir. 1985), however, demonstrates that equating all "regulatory" functions to "adjudicatory" or "prosecutorial" ones results in an extension of the absolute immunity doctrine beyond the limits placed upon it by the Supreme Court and recognized by this Court in *Zandford v. National Ass'n of Securities Dealers*, 30 F. Supp. 2d 1 (D.D.C. 1998).

Accordingly, the cases relied upon by Defendants for the proposition that the ministerial/discretionary distinction is irrelevant in this context are inapposite—indeed, in those cases attempts by plaintiffs to characterize the conduct at issue as ministerial were rejected because the courts had already determined that the conduct fell squarely within the "adjudicatory" or "prosecutorial" context. In contrast, Plaintiffs in this case have highlighted the ministerial nature of the conduct at issue, the computerized grading of an objective exam, to demonstrate that this conduct falls outside the scope of anything that can be credibly characterized as "adjudicatory" or "prosecutorial."

Furthermore, EDS virtually ignores Plaintiffs' two main points (and thereby, perhaps, implicitly concedes their validity): (1) that the cases relied upon by EDS for the proposition that they are entitled to immunity by virtue of their relationship with the NASD are inapposite because those cases involved defendants' participation in "adjudicatory" or "prosecutorial" activities, and (2) that EDS' claim of immunity is a form of the "government contractor" defense, an affirmative defense not properly raised on a 12(b)(6) motion. For these reasons, in addition to those presented by Plaintiffs in

their response brief, Plaintiffs respectfully submit that Defendants' motions to dismiss should be denied.

## II.     ARGUMENT

### A.     AN ADJUDICATORY OR PROSECUTORIAL FUNCTION IS THE KEY TO ABSOLUTE IMMUNITY.

The seminal case recognizing immunity for the NASD is *Austin*, 757 F.2d 676.  In *Austin*, the Fifth Circuit held that the test for immunity set forth in *Butz v. Economou*, 438 U.S. 478 (1978), should be applied to determine whether the NASD was absolutely immune from claims based on allegations of improper conduct in disciplining one of its own members.  Under the *Butz* test, immunity is warranted only where "the official's functions *share the characteristics of the judicial [or prosecutorial] process*."  757 F.2d at 688 (emphasis added).  Because the conduct at issue involved disciplinary proceedings, the *Austin* court had no reservations finding immunity for the NASD and its disciplinary board.  *Id.* at 698 ("The [disciplinary board] decided which charges would be brought against Austin, a traditional prosecutorial function, and then adjudicated Austin's guilt, which clearly is functionally equivalent to a judge.").

*Butz* recognized that immunity is "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." 438 U.S. at 512.  Following this proposition, the Court held that "[w]e think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Id.* at 512-13.

The principal cases relied upon by the NASD and EDS are the progeny of *Austin* and *Butz*. Indeed, in the first case to address SRO immunity in the Second Circuit, *Barbara v. New York Stock Exchange*, 99 F.3d 49 (2d Cir. 1996), the court followed *Austin*, noting that "[t]he function of the defendant in this case is identical with that of the defendants in *Austin*. There is no doubt that those functions 'share the characteristics of the judicial process . . . .'" 99 F.3d at 59.

It was not until *D'Alessio v. New York Stock Exchange*, 258 F.3d 93 (2d Cir. 2001), that the Second Circuit purported to extend the doctrine of absolute immunity for SROs beyond those activities that are judicial or prosecutorial in nature: "[A]lthough the immunity inquiry in *Barbara* was confined to the NYSE's conduct in connection with disciplinary proceedings, *Barbara* stood for the broader proposition that a SRO, such as the NYSE, *may* be entitled to immunity from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions." 258 F.3d at 105 (emphasis added). Following *D'Alessio*, the Second Circuit also granted immunity to an SRO in *DL Capital Group, LLC v. NASDAQ Stock Market, Inc.*, 409 F.3d 93 (2d Cir. 2005).

Although the courts in *D'Alessio* and *DL Capital* purported, in *dicta*, to extend immunity for conduct outside of the adjudicatory or prosecutorial context, they did so in factual contexts closely analogous or identical to adjudicatory or prosecutorial functions. In *D'Alessio*, the conduct at issue was the NYSE's allegedly improper performance of its "interpretive, enforcement, and referral functions" in failing to properly interpret a provision of the Exchange Act, failing to properly monitor a broker's activities, and allegedly providing false information to the United States Attorney's Office and the SEC in their investigations of the plaintiff. 258 F.3d at 106. These activities are closely

4

related to an SRO's enforcement duties, which implicate the same policy concerns

inherent in providing immunity to prosecutors and judges. *See Butz*, 438 U.S. at 512-13.

Similarly, the *DL Capital* court granted immunity to Nasdaq, a subsidiary of the NASD,

for claims arising from Nasdaq's decision to cancel trades in a particular stock after it

determined that a temporary, precipitous decline in the stock's price "was caused by

'misuse or malfunction' of an electronic trading system." 409 F.3d at 96. Although

plaintiff cast its claim in terms of a challenge to the way in which Nasdaq's decision was

disclosed, as opposed to a challenge to the decision itself, the court nonetheless held that

Nasdaq was immune because it could not effectuate its decision to cancel the trades

without making its decision known. *Id.* at 98. Nasdaq's decision to cancel the trades at

issue was inarguably an instance of discretion exercised to maintain a fair and orderly

market, conduct closely analogous to an adjudicatory function. *See also Sparta Surgical

Corp. v. National Ass'n of Securities Dealers*, 159 F.3d 1209 (9th Cir. 1998) (NASD

made a discretionary decision to de-list and suspend trading of the plaintiff company's

stock). Accordingly, despite Defendants' reliance on *dicta* in the aforementioned cases,

Plaintiffs are aware of no cases holding that "regulatory" duties in the broad sense are

equivalent to "adjudicatory" or "prosecutorial" functions protected by absolute immunity.

Accordingly, Plaintiffs respectfully submit that the immunity test applied by this

Court in *Zandford v. National Ass'n of Securities Dealers, Inc.*, 30 F. Supp. 2d 1 (D.D.C.

1998) should be applied in this case as well. The *Zandford* court, relying on guidance

from the D.C. Circuit, *see Zandford v. NASD*, 1996 WL 135716 (D.C. Cir. 1996), applied

the *Butz* test to determine whether immunity was warranted. *See* 30 F. Supp. 2d at 10-11.

In this case, Defendants cannot credibly claim that the use of flawed grading software

used in this case is anything like an "adjudicatory" or "prosecutorial" function deserving of absolute immunity.

**B.    DEFENDANTS' CASES REJECTING THE MINSTERIAL/DISCRETIONARY DISTINCTION ARE INAPPOSITE.**

Defendants rely on several cases for the proposition that the distinction between ministerial and discretionary activities is irrelevant in the context of whether the NASD, and by extension EDS, are entitled to immunity. *See, e.g., New England Cleaning Svcs., Inc. v. American Arbitration Ass'n*, 199 F.3d 542 (1st Cir. 1999); *Wilson v. Kelkhoff*, 86 F.3d 1438 (7th Cir. 1996); *Olson v. NASD*, 85 F.3d 381 (8th Cir. 1996); *Sindram v. Suda*, 986 F.2d 1459 (D.C. Cir. 1993); *Austern v. Chicago Board Options Exchange, Inc.*, 898 F.2d 882 (2d Cir. 1990). Upon closer examination, however, Defendants' position does not hold up—indeed, it depends on the same sleight of hand at work in their prior arguments—that the "regulatory" functions of the NASD, regardless of how administrative they may be, entitle it to immunity just as its "adjudicatory" or "prosecutorial" functions do.

In the cases relied upon by Defendants, the courts rejected plaintiffs' attempts to distinguish conduct that was ministerial as opposed to discretionary because the conduct at issue took place squarely within a judicial (or arbitral) or prosecutorial context. *See New England Cleaning*, 199 F.3d at 545 ("A sponsoring organization's immunity extends to the administrative tasks it performs, *insofar as these are integrally related to the arbitration*.") (emphasis added); *Wilson*, 86 F.3d at 1444-45; *Olson*, 85 F.3d at 383; *Sindram*, 986 F.2d at 1460-61; *Austern*, 898 F.2d at 886. Plaintiffs here have drawn attention to the ministerial nature of the conduct at issue to illustrate how different it is

from anything that can be considered quasi-judicial or prosecutorial. Accordingly, Defendants' reliance on the aforementioned cases is misplaced.

### C.    EDS IMPLICITLY CONCEDES THE VALIDITY OF PLAINTIFFS' POSITION THAT EDS IS NOT ENTITLED TO ABSOLUTE IMMUNITY.

EDS fails to rebut Plaintiffs' distinguishing of the cases upon which it relies for the argument that it is somehow derivatively entitled to the NASD's immunity (which is inapplicable under the facts of this case in the first instance). In their response brief, Plaintiffs argued that cases relied on by EDS do not support the broad proposition that private actors, indeed commercial interests performing under a technology contract, are entitled to immunity incident to protected governmental functions. *See* Plaintiffs' Response Brief at 16-18. EDS replies merely by citing the very same cases and making the same assertions, seeking to obfuscate the fact that EDS did not, under the facts alleged in this case, perform a discretionary, quasi-adjudicatory, or quasi-prosecutorial function.[1] Moreover, EDS does not answer Plaintiffs' argument that EDS' assertion of immunity is essentially a form of the "government contractor" defense, *see* Plaintiffs' Response Brief at 18-19, apparently conceding the correctness of this position.

## III.    CONCLUSION

For the foregoing reasons, in addition to the reasons set forth in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss, Plaintiffs respectfully submit that Defendants' motions to dismiss should be denied in their entirety.

---

[1] EDS also erroneously asserts that the commercial nature of its relationship with the NASD has no bearing on whether it is entitled to immunity. *See, e.g., Richardson v. McKnight*, 521 U.S. 399, 413 (1997) (denying immunity to a private contractor "organized to assume a major lengthy administrative task (managing an institution [on behalf of a governmental entity]) with limited direct supervision by the government, [having] undertake[n] that task for profit and potentially in competition with other firms.").

DATE:  March 28, 2007                Respectfully submitted,

By:  /s/ Herbert E. Milstein
Herbert E. Milstein, Esq. (DC Bar # 26203)
Joseph P. Helm, III, Esq.
COHEN, MILSTEIN, HAUSFELD & TOLL,
P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C.  20005
Telephone:  202-408-4600
Facsimile:   202-408-4699

Gerald E. Martin, Esq.
Laurel A. Johnston, Esq.
BARRETT, JOHNSTON & PARSLEY
217 Second Avenue North
Nashville, Tennessee 37201
Telephone: 615-244-2202
Facsimile: 615-252-3798

Jonathan W. Cuneo, Esq. (DC Bar# 939389)
William H. Anderson, Esq. (DC Bar # 502380
District Court Admission to Occur 3/6/07)
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: 202-789-3960
Facsimile: 202-789-1813

Stephen A. Weiss, Esq.
Michael S. Farkas, Esq.
SEEGER WEISS LLP
One William Street
New York, NY 10004
Telephone: 212-584-0700
Facsimile: 212-584-0799

***Liaison Counsel for Plaintiffs***

Steven N. Berk (DC Bar # 432870)
CHAVEZ & GERTLER LLP
1225 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: 202-232-7550
Facsimile: 202-232-7556

Steven A. Schwartz
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: 610-642-8500
Facsimile: 610-649-3633

*Of Counsel*