**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE SERIES 7 BROKER QUALIFICATION EXAM SCORING LITIGATION<br><br>This Document Relates To:<br>ALL CASES | Misc. Action No. 06-355 (JDB);<br>MDL Docket No. 1772 |

**NASD'S RESPONSE TO PLAINTIFFS' SUR-REPLY BRIEF**

NASD submits this response pursuant to this Court's April 2 order.

**I.   NASD Has Absolute Immunity For *All* Regulatory Functions It Performs Pursuant To Federally Delegated Authority**

Apparently abandoning their reliance on a flawed "ministerial"/"discretionary" distinction, the plaintiffs now argue that regulatory immunity does not exist—that absolute immunity can *only* protect functions that are adjudicative or prosecutorial. The plaintiffs do not point to anything in the Exchange Act that would justify drawing such a stark distinction among NASD's delegated functions, and in fact *none* of the plaintiffs' cases denies absolute immunity on any such reasoning. To the contrary, settled precedent establishes that NASD is entitled to absolute immunity when it performs a function under the Exchange Act's framework of delegation. Here, NASD administers and grades qualifications examinations pursuant to a delegation of authority that is just as explicit as its power to adjudicate disputes and discipline brokers. The protection of immunity goes hand in hand with that delegation: the SEC, not private plaintiffs, reviews NASD's grading and registration decisions.

Thus, for example, in *D'Alessio v. N.Y. Stock Exch.*, 258 F.3d 93 (2d Cir. 2001), the court of appeals expressly "reject[ed] D'Alessio's attempts"—similar to the plaintiffs' here—"to limit

1

our application of the doctrine of absolute immunity to cases involving misconduct in connection with disciplinary proceedings." *Id.* at 105. In fact, the cases on which the plaintiffs rely here, such as *Austin Municipal Securities* and *Barbara* (each of which held that the SRO *was* immune), were not "confined to . . . disciplinary proceedings"; they "stood for the broader proposition that a SRO . . . may be entitled to immunity from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions." *Id.* Although some of D'Alessio's claims touched on functions resembling adjudication and prosecution, others extended to the SRO's alleged "malfeasance" in performing its *regulatory* duty to monitor compliance with the securities laws. All of these "distinct" claims of SRO misconduct "share[d] a common theme: they all relate to proper functioning of the regulatory system," and hence were barred by absolute immunity. *Id.* at 106 (internal quotation marks omitted). The plaintiffs attempt to describe as "*dicta*" the application of immunity to regulatory conduct, Pls.' Sur-Reply 4, 5, but in fact it is the central holding of the case.

Similarly, in *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209 (9th Cir. 1998), the Ninth Circuit emphasized that NASD was performing "a regulatory function cloaked in immunity," pursuant to broad delegated authority from the SEC. *Id.* at 1215. Because NASD's exercise of that function—the "quintessentially regulatory" power to suspend trading on an exchange—was "under the aegis of the Exchange Act's delegated authority," NASD was absolutely immune from suit alleging that it had performed that function poorly or even maliciously. *Id.* at 1214-15. This, too, was a holding, not *dicta*. *Accord, e.g.*, *DL Capital, LLC v. NASD*, 409 F.3d 93, 97 (2d Cir. 2005) (holding NASD immune for the *regulatory* function of canceling trades on an exchange); *Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416, 422-23 (S.D.N.Y. 2006) (holding SRO immune for the regulatory functions of promulgating rules and reviewing compliance).

NASD administers the registration process, including the Series 7 exam, under authority specifically delegated to it under the Exchange Act. *See* 15 U.S.C. § 78*o*-3(g)(3)(B) (authorizing NASD to "examine and verify the qualifications of an applicant"); *id.* § 78*o*(b)(7) (authorizing the SEC to "require [securities-industry personnel] to pass tests administered by or on behalf of any [SRO]"); NASD Br. 12-13 (explaining that the SEC formerly administered its own exams but now relies on the SROs to do so). Indeed, the SEC expressly prohibits anyone working for an NASD member firm from transacting securities business with the public without first passing NASD's "required examinations," 17 C.F.R. § 240.15b7-1, because qualification requirements like the Series 7 exam are "of substantial importance in promoting compliance with the substantive requirements of the federal securities laws." Requirement of Broker-Dealers to Comply with SRO Qualification Standards, Exchange Act Release No. 32261, 58 Fed. Reg. 27656, 27657 (May 11, 1993). As in *Sparta*, NASD's decision to approve an application for registration plays a crucial role in maintaining the integrity of the markets: granting a broker registration with NASD "creates the public expectation" that the broker is honest and qualified. 159 F.3d at 1214. The quasi-governmental nature of NASD's qualifications-testing and registration functions is more than sufficient to warrant absolute regulatory immunity.

Indeed, the procedural safeguards that apply to NASD's qualifications and registration determinations are, if anything, greater than those that apply to market-regulation decisions like those at issue in *Sparta* or *DL Capital*. *See* NASD Br. 6 (explaining the multi-level framework of administrative and judicial review open to candidates who are denied registration). The availability of this form of administrative redress bolsters the argument for absolute immunity. *See Zandford v. NASD*, 30 F. Supp. 2d 1, 18 (D.D.C. 1997).

3

## II. NASD's Review Of Brokers' Qualifications Is A Regulatory Function Entitled To Absolute Immunity

Attempting to grapple with *DL Capital*, *Sparta*, and the other cases applying regulatory immunity, the plaintiffs suggest that the SROs' actions in those cases—such as canceling trades or halting trading—were sufficiently "analogous" to adjudication that they are entitled to immunity. Even if that argument were accepted, it would not defeat NASD's immunity in this case, because granting or denying registration based on qualifications determinations plainly is no less "analogous" to adjudication than is a regulatory decision to stop the trading of a particular security. Registration involves an assessment of the applicant's character and credentials; *admission* decisions are no less adjudicative than are *expulsion* decisions. NASD Br. 14-15. The plaintiffs may argue that *their* denials of registration were based on objective criteria (failure to pass a required examination) rather than subjective discretion, but that does not deprive the registration function of its adjudicative character. This Court does not become any less a court when it (or its clerk) applies a clear time limit or filing-fee requirement. *See also* NASD Reply Br. 9 (explaining the element of subjective judgment in registration decisions).

## III. The Plaintiffs Have Appropriately Abandoned Reliance On Their "Ministerial" Theory

The plaintiffs' opposition brief accepted regulatory immunity, but argued that the grading of qualifications exams is "ministerial." In their sur-reply, the plaintiffs now state that they made the latter assertion only to "illustrate" that the grading of qualifications examinations is not adjudicative or prosecutorial, and hence is not immune. Pls.' Sur-Reply at 6. Indeed, they concede that the cases discussed in NASD's briefs "rejected plaintiffs' attempts to distinguish conduct that was ministerial as opposed to discretionary." *Id.*; *see* NASD Br. 10-11, 20; NASD Reply Br. 3-8. As those cases demonstrate, conduct (ministerial or not) that is a "basic and integral" part of a protected function is shielded by immunity. *Sindram v. Suda*, 986 F.2d 1459,

4

1461 (D.C. Cir. 1993) (per curiam); *accord Austern v. Chi. Bd. Options Exch.*, 898 F.2d 882, 886 (2d Cir. 1990) (SRO's immunity for sponsoring arbitration extended to "all functions that are integrally related to the arbitral process").

The plaintiffs no longer dispute that the grading of qualifications examinations is a "basic and integral part" of a key regulatory function, *i.e.*, determining that an individual possesses both the intellect and the integrity to enter the securities industry. Just as the grading of bar examinations and the processing of applications for admission to practice law are essential parts of the judicial function, *see* NASD Br. 17 (citing cases), so the grading of the Series 7 exam is an integral part of the congressionally mandated qualifications-testing and registration processes.

Rather, the plaintiffs' only argument is their extreme contention that *no* regulatory function—discretionary, ministerial, or otherwise—is protected by absolute immunity, no matter how clear and precise the delegation of federal authority, unless it resembles adjudication or prosecution. As explained above, that remarkable contention is incorrect. And the plaintiffs are left with no other reason why immunity does not apply here.

**IV.   Conclusion**

For the foregoing reasons, as well as those stated in the opening and reply briefs, all claims against NASD should be dismissed with prejudice.

Dated:  April 9, 2007                                          Respectfully submitted,

By: /s/  F. Joseph Warin

OF COUNSEL:                                                     F. Joseph Warin, D.C. Bar No. 235978
John J. Flood, D.C. Bar No. 269837                William M. Jay, D.C. Bar No. 480185
NATIONAL ASSOCIATION OF                      Jennifer J. Schulp, D.C. Bar No. 497742
SECURITIES DEALERS, INC.                         GIBSON, DUNN & CRUTCHER LLP
1735 K Street, N.W.                                          1050 Connecticut Avenue, N.W.
Washington, D.C.  20036                                Washington, D.C.  20036
                                                                              Telephone: (202) 955-8500

*Attorneys for Defendant*
*National Association of Securities Dealers, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of April, 2007, I caused NASD's Response to Plaintiffs' Sur-Reply to be served on all parties required to be served by the means listed below:

All parties whose counsel are registered with the Court's CM/ECF system were served electronically.

The following parties were served by mailing one copy of the document by U.S. mail, first class postage prepaid, to their counsel at the addresses listed:

John Balestriere
BALESTRIERE PLLC
225 Broadway, Suite 2700
New York, NY  10007

*Attorney for Andrew Crabbe and Linda Cutler*

Joseph Tacopina
*Of Counsel*
ARTHUR L. AIDALA & ASSOCIATES, P.C.
597 Fifth Avenue
New York, NY  10017

*Attorney for James Bruen*

William W. Graham
GRAHAM & ERVANIAN, P.C.
604 Locust Street, Suite 630
Des Moines, IA  50309

*Attorney for Christopher Wilson*

Jeffrey S. Nobel
SCHATZ NOBEL IZARD, P.C.
20 Church Street, Suite 1700
Hartford, CT  06103

*Attorney for Alex Ruimerman*

/s/ F. Joseph Warin

F. Joseph Warin