IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SERIES 7 BROKER QUALIFICATION EXAM SCORING LITIGATION<br><br>This Document Relates To:<br>ALL CASES | Misc. Action No. 06-355(JDB);<br>MDL Docket No. 1772 |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM**

# TABLE OF AUTHORITIES

**Cases**

*Austin Mun. Securities, Inc. v. National Association of Securities Dealers, Inc.*,
757 F.2d 676 (5th Cir. 1985) .................................................................................... 9

*Berkovitz v. United States.*,
486 U.S. 531 (1988) ............................................................................................ 1, 4

*Butz v. Economou*,
438 U.S. 478 (1978) ............................................................................................... 9

*Cope v. Scott*,
45 F.3d 445 (DC Cir. 1995) ............................................................................... 2, 8

*Dalehite v. U.S.*,
346 U.S. 15 (1953) ................................................................................................. 4

*Dexter v. Depository Trust & Clearing Corp*,
206 F.Supp.2d 260, (S.D.N.Y. 2005) .................................................................... 8

*Downs v. United States*,
552 f.2D 990 (1975) .............................................................................................. 1

*Eastern Gulf, Inc. v. Metzger Towing, Inc.*,
910 F.2d 775 (11th Cir. 1990) ............................................................................. 10

*FDIC v. Meyer*,
510 U.S. 471 (1994) ............................................................................................... 3

*Girling Health Systems, Inc. v. U.S.*,
22 Cl.Ct. 66 (1990) .............................................................................................. 11

*Griggs v. WMATA*,
232 F.3d 917 (D.C. Cir. 2000) .............................................................................. 6

*Hercules, Inc. v. U.S.*,
516 U.S. 417 (1996) ............................................................................................ 10

*Indian Towing Co., v. United States.*,
350 US 61 (1955) ................................................................................................... 7

*Int'l Data Products Corp. v. U.S.*,
70 Fed.Cl. 387 (2006) .......................................................................................... 10


*L'Enfant Plaza Properties, Inc. v. U.S.*,
   229 Ct.Cl. 278, 668 F.2d 1211 (1982) ................................................................. 11

*Lipkin v. S.E.C.*,
   468 F.Supp.2d 614 (S.D.N.Y., 2006) .................................................................... 3

*Miles v. Naval Aviation Museum Foundation, Inc.*,
   289 F.3d 715 (11th Cir. 2002) .............................................................................. 6

*Redmond v. United States*,
   518 F.2d 811 (7th Cir. 1975) ............................................................................ 2, 3

*Russell Corp. v. U.S.*,
   210 Cl.Ct. 596, 537 F.2d 474 (1976) .................................................................. 10

*Sigman v. United States*,
   217 F.3d 785, (9th Cir. 2000) ............................................................................... 6

*Swierkiewicz v. Sorema*,
   534 U.S. 506 (2002) ............................................................................................. 2

*United States v. Gaubert*,
   499 U.S. 315 (1991) ............................................................................................. 5

*United States v. Varig Airlines,*
   467 US 797 (1984) ............................................................................................... 4

## Statutes

28 U.S.C. § 2671-2680 .................................................................................................. 3

28 U.S.C. § 2680 ....................................................................................................... 3, 4

28 U.S.C. § 2680(a) ....................................................................................................... 2

28 U.S.C. §1491 .......................................................................................................... 10

28 U.S.C. §2680(h) ........................................................................................................ 2

U.S.C. § 2675(a) ............................................................................................................ 3

## Other Authorities

66 Am. Jur. 2d *Restitution and Implied Contracts* §2 ................................................. 10

**Introduction**

Plaintiffs, pursuant to this Court's April 25, 2007 Order, respectfully submit this Supplemental Memorandum. In that Order, the Court instructed the parties to submit briefs regarding the Securities and Exchange Commission's (SEC) immunity from any or all of Plaintiffs' claims. Specifically, the Court posed questions about the existence of federal subject matter jurisdiction over Plaintiffs' negligence and negligent misrepresentation claims under the Federal Tort Claims Act (FTCA) and contract claims under the Tucker Act had the SEC administered the examinations in question.

The SEC would **not** be immune under the FTCA from Plaintiffs' negligence claims had the SEC made the coding mistake itself. The conduct at issue: apparently an automated coding error (where two variables were transposed) does not meet the test for the kind of discretionary function by the federal government that is exempt from claims under the FTCA. Even though this coding error was part of the testing process and, as the NASD described in oral argument, "interwoven" with the SEC/NASD's "gate keeper" function, the mistake should not and cannot be shielded by either sovereign or absolute immunity.[1]

The Supreme Court has expressly stated that the type of SEC regulatory functions that Congress intended to except under the discretionary function exception are "those involving policy formulation, as distinguished from the day-to-day activities of persons not engaged in determining the general nature of the Government's business." *Downs v. United States*, 522 F.2d 990, 996 (1975). It is hard to imagine a scenario more aptly fitting the description of a day-to-

---

[1] NASD and EDS may shift away from this "gate keeping" argument and attempt to define Plaintiffs' claims as an attempt to challenge NASD's discretion to contract with a third party such as EDS. Plaintiffs do not, and realize that they likely could not, challenge this discretion. The conduct in question is the coding error, not a policy judgment or decision.

1

day activity, far removed from a policy decision, than some unnamed technician coding software.

The Supreme Court has found that the discretionary function exception does not "preclude liability for any and all acts arising out of the regulatory programs of federal agencies." *Berkovitz v. United States.,* 486 U.S. 531, 538 (1988). Consistent with that standard, this Circuit has articulated the proper analysis: "Whether the nature of the decision involved the exercise of that decision involved the exercise of a policy judgment." *Cope v. Scott,* 45 F.3d 445, 449-50 (DC Cir. 1995). The nature of the conduct involved here – a coding error –did not involve the exercise of a policy judgment and therefore it is not exempt from liability.

Moreover, at this stage in the litigation, dismissal of Plaintiffs' negligence claim is premature. Had the SEC filed a similar Motion to Dismiss pursuant to Rule 12(b)(6), as did NASD and EDS, Plaintiffs might very well seek discovery to ascertain more information regarding the so called coding error in an effort to demonstrate that the activity was in fact ministerial and not rising to the level of invoking 28 U.S.C. § 2680(a). This Court should accept as true all facts alleged in the Consolidated Complaint. *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002). Based on the facts before the Court, no party – be it the SEC, NASD or EDS – is entitled to absolute or sovereign immunity.

Pursuant to 28 U.S.C. §2680(h) the SEC would, however, be immune for their negligent misrepresentation claim since that tort is explicitly excepted from liability. See also, *Redmond v. United States*, 518 F.2d 811 (7th Cir. 1975). The viability of Plaintiffs implied contract claim under the Tucker Act depends upon Plaintiffs' ability to establish that its contract is express or implied in fact. This is a factually intensive inquiry that could not be resolved in the context of a Rule 12(b)(6) motion.

**I.    The SEC would not be immune from Plaintiffs' negligence claim under the Federal Tort Claims Act.**

Lawsuits against the United States and its agencies are barred by sovereign immunity unless this immunity is explicitly waived. *FDIC v. Meyer*, 510 U.S. 471 (1994). When Congress passed the FTCA, it waived immunity from suits for money damages for traditional tort claims. 28 U.S.C. § 2671-2680. This waiver is, however, subject to certain specific exceptions found at 28 U.S.C. § 2680.[2]

The SEC is subject to the FTCA. The SEC may, however, escape liability for a traditional tort if the plaintiff fails to follow the detailed mechanisms for filing a claim under the FTCA or if the conduct complained of is subject to one of the explicit exceptions to liability.[3] See *Redmond v. United States*, 518 F.2d 811 (7th Cir. 1975) (dismissing FTCA claim against United States, by and through the SEC, because the essence of plaintiff's allegations constituted a claim for misrepresentation which is an exception to the FTCA); *Lipkin v. S.E.C.*, 468 F.Supp.2d 614 (S.D.N.Y., 2006) (finding the FTCA claim against the SEC to be inapplicable because of the intentional tort exception and plaintiffs' failure to first present their claim in writing to the SEC pursuant to 28 U.S.C. § 2675(a)).

The SEC would likely argue that the coding error was the result of the performance of a discretionary act in furtherance of the SEC's regulatory function. As such, the SEC would seek the same blanket immunity proposed by NASD and EDS. Specifically, the SEC would likely attempt to seek refuge in 28 U.S.C. § 2680(a) which states:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not

---

[2] 28 U.S.C. § 2680(a)-(n) delineates the various exceptions to the FTCA. The only exception that the SEC might invoke in this case to challenge Plaintiffs' negligence claim is 28 U.S.C. § 2680(a) which describes the discretionary function exception. None of the other exceptions are applicable to Plaintiffs' negligence claims.

[3] Often FTCA claims are dismissed because a party names the SEC rather than the United States or fails to present their claim in writing to the SEC prior to filing suit. These cases involving procedural errors, of course, shed no light on the substance of whether the SEC would be immune under these circumstances.

such a statute or regulation be valid, or based upon the exercise or performance of the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved the abused.

The Supreme Court has delineated a two-step analysis necessary to determine whether a government action falls within the discretionary function exception under the FTCA. Courts must analyze the nature of the conduct in question and determine whether it involved an element of judgment or choice:

> In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the exception; **conduct cannot be discretionary unless it involves an element of judgment or choice**.

*Berkovitz v. United States.,* 486 U.S. 531, 536 (1988) (emphasis added) (citing *Dalehite v. U.S.,* 346 U.S. 15, 34 (1953)).

If the conduct in question invokes an element of judgment or choice, then the second step of the analysis is to determine whether the judgment is of the nature that the discretionary function exception in the FTCA was designed to shield. As the Court in *Berkovitz* pointed out, Congress intended the exception to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz* at 536-37 (quoting *United States v. Varig Airlines,* 467 US 797, 814 (1984)). As a result, the discretionary function exception "insulates the government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz,* at 537.

The SEC would be unable to make a convincing argument that its actions pass the *Berkovitz* test thereby shielding the coding error with sovereign immunity. The conduct complained of – the transposition of some coding variables – did not involve "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). Plaintiffs, who have

4

not had the benefit of any discovery, only know that Defendants have concluded that a "technician" made a mistake. Based on the record before the Court, that mistake was the result of rote or mechanical action rather than an action that required deliberation. Consolidated Complaint, at ¶ 27.

Even if the SEC could show that the technician's mistake involved an element of judgment or choice, the SEC could not overcome the second *Berkovitz* hurdle. It could not demonstrate that the judgment or choice was a "permissible exercise of policy judgment." *Berkovitz*, at 537. In *Berkovitz,* the Court explicitly rejected the government's argument that the discretionary-function exception "**precludes liability for any and all acts arising out of the regulatory programs of federal agencies.**" *Berkovitz* at 538 (emphasis added). Instead, the court there focused on "the language of the exception, which protects 'discretionary' functions **rather than 'regulatory' functions**." *Id*. (emphasis added). Thus, if the SEC's argument ignored the specific conduct in question while focusing on the broader "gate keeping" function, as NASD and EDS' arguments do, then the SEC would have failed to acknowledge that the intent of the discretionary exception is to protect the actual exercise of judgment rather than ministerial tasks. Unlike a protected discretionary act, a ministerial activity of the government "connotes the execution of policy as distinct from its formulation," *Griggs v. WMATA*, 232 F.3d 917, 921 (D.C. Cir. 2000), and such activities should not be accorded the protection of immunity.

While "gate keeping" may be a responsibility of the SEC, all actions surrounding it are not automatically shrouded by immunity. Not even the United State's military's gate keeping functions -- the enlistment procedures -- are afforded blanket sovereign immunity. See *Sigman v. United States*, 217 F.3d 785, (9th Cir. 2000) (refusing to dismiss plaintiffs' claim for negligently processing the enlistment of a mentally unstable individual by the Air Force on the grounds that the discretionary function was inapplicable because of negligent omissions by the military's

5

physician and reviewing officer). The proper analysis is to distinguish between a challenge of the policies behind the "gate keeping" from a challenge of a ministerial action or omission in furtherance of those policies.

NASD and EDS have argued that due to the nature of the gate keeping function it is illogical to parse the discretionary testing function down to merely a coding error. This is, of course, what courts must do to determine if a particular act or omission involved an element of policy judgment. In *Miles v. Naval Aviation Museum Foundation, Inc.*, 289 F.3d 715 (11th Cir. 2002), the United States attempted to cast the plaintiff's claim as a challenge to the Navy's decision to sell an aircraft to a third party. After it was sold, the nose of the aircraft fell off severely injuring an individual. The plaintiff brought his claim asserting that the government had failed to perform inspections and train mechanics. The plaintiff asserted that if the government had done so, the accident would have been avoided. The Eleventh Circuit refused to invoke the discretionary exception provision of the FTCA and held that the plaintiff was "not challenging the sale of the aircraft. Plaintiff challenges the Government's failure to properly require that trained, certified mechanics perform the [required] test . . . ." *Miles*, at 722. Courts must separate the discretionary decision (the decision to require a multiple choice exam with weighted questions) from ministerial acts (coding the software) to conduct the *Berkovitz* analysis.

Plaintiffs probably could not challenge the SEC's actual exercise of discretion related to the Series 7 examination. For example, Plaintiffs might have difficulty challenging the content of the examination or the decision to use a multiple choice format with weighted questions. The difference here, however, is that the conduct challenged was ministerial in nature and not the exercise of any judgment or discretion.

In *Indian Towing Co., v. United States.,* 350 US 61 (1955), the Supreme Court refused to extend the discretionary function exception in the FTCA to the United States Coast Guard for its

failure to keep the light in a lighthouse in good working order. The Court distinguished between the Coast Guard's discretion to choose to operate the lighthouse in the first place from its duty to keep the lighthouse in good working repair once the Coast Guard had decided to undertake the lighthouse service. The court determined that "if the Coast Guard failed in its duty and damage was thereby caused to [Plaintiffs], the United States is liable under the tort claims act." *Id.,* at 69. Here the analogy is obvious.

The NASD deliberately took on responsibility for this test, just as the Coast Guard deliberately took on responsibility for the lighthouse. In both cases, once the responsibility was undertaken, the opportunity for judgment or subjectivity was eliminated. Either the light was on in the lighthouse or it was not. Likewise, either the software was programmed correctly or it was not. Here, the NASD's proverbial light was not out for a day or a week, but over a year, and there was not one injury, but over 1800.

This Circuit has cautioned courts not to simply draw a line between "planning decisions" and "operational decisions," *Cope v. Scott,* 45 F.3d 445, 449-50 (DC Cir. 1995), and Plaintiffs here do not suggest otherwise. The D.C. Circuit urged courts to conduct the proper analysis: "Whether the nature of the decision involved the exercise of policy judgment." *Cope,* at 449. What is inescapable in this case is the fact that no decision, let alone any policy judgment, is being challenged. In this instance, a technician inadvertently switched some coding variables.

The SEC would also likely rely on *Dexter v. Depository Trust & Clearing Corp*, 206 F.Supp.2d 260, (S.D.N.Y. 2005), as did NASD and EDS, in support of the proposition that all its regulatory functions are immune. Specifically, SEC might take comfort in the language that "Because the SEC would enjoy absolute immunity from suit if it carried out these responsibilities itself, SROs have similar immunity when exercising functions delegated to them by the SEC." *Id*., at 263. However, the Court there recognized that the SEC's immunity was intended to

7

prevent the inhibition of "the exercise of [the SEC's] independent judgment." *Id*.  Moreover, the Court in *Dexter* described the lawsuit as one that "challeng[ed] the NASD's **decision** setting the ex-dividend date for the distribution in question . . ." *Id*., at 262 (emphasis added). The *Dexter* case, along with the litany of cases involving the imposition of absolute immunity for the regulatory functions conducted or delegated by the SEC, can all be easily distinguished from the case at hand – they all involve protection of a deliberative or discretionary process.

The line of cases relied upon by NASD and EDS for the proposition that all actions relating to the regulatory functions are immune can be traced to *Austin Mun. Securities, Inc. v. National Association of Securities Dealers, Inc.,* 757 F.2d 676 (5th Cir. 1985).  The immunity granted in that case arose out of a challenge to NASD's adjudicatory and prosecutorial functions in disciplining its members.  The court there relied heavily upon the Supreme Court's opinion in *Butz v. Economou,* 438 U.S. 478 (1978), in which the Court announced a three-prong test for ascertaining the immunity of officials from a government agency.

The *Austin* court recognized the adjudicatory nature of the challenged conduct and sought to protect the discretion exercised by the NASD in disciplining its members.  The *Austin* court, however, stopped far short of granting NASD blanket immunity for all regulatory functions:

> The NASD performs myriads of activities in which it and its officers play no adjudicatory role.  These include general administrative functions and the operation of the NASDAQ automated quotations system used in the over-the-counter securities market.  Defendants lack immunity for these activities.

*Austin,* at 691-92.  Thus, the *Austin* court flatly refused to extend this immunity to instances where there was no discretion exercised involving an element of judgment or choice.  If the SEC were to rely on the progeny of *Austin* for immunity, as NASD and EDS have, it would be a mistake.  Simply put, the operations of the SEC are not always immune for all of its activities, even if they involve so-called regulatory functions.

8

Neither statutory language nor case law would enable the SEC to avoid liability under these facts. The FTCA's discretionary exception would not afford the SEC protection for acts of a technician, who exercising no policy judgments, simply made a mistake.

II.  **The SEC's liability under the Tucker Act depends on a factual intensive inquiry regarding whether the implied contract was one in law or in fact.**

The Tucker Act, 28 U.S.C. §1491, provides the federal claims court with subject matter jurisdiction over claims against the United States for breaches of express or implied in fact contracts, but not to implied in law contracts. *Hercules, Inc. v. U.S.*, 516 U.S. 417, 423 (1996). Implied in law contracts, also called constructive or quasi-contracts, arise where a duty is imposed by operation of law without regard to the intent of the parties. *Russell Corp. v. U.S.*, 210 Cl.Ct. 596, 537 F.2d 474, 482 (1976). To establish that a contract is implied in fact, a plaintiff must demonstrate (1) a mutual intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) authority to contract on the part of the government agent. *Int'l Data Products Corp. v. U.S.*, 70 Fed.Cl. 387, 400 (2006).

The determination of whether an agreement is an implied in law contract likewise depends on the specific facts and circumstances unique to each case. *U.S. for Use and Ben. Of Eastern Gulf, Inc. v. Metzger Towing, Inc.*, 910 F.2d 775, 781 (11th Cir. 1990). A contract in law arises where, under all of circumstances, a relation exists between the parties and a promise is imputed to perform a legal duty. 66 Am. Jur. 2d *Restitution and Implied Contracts* §2.

Here, Plaintiffs have alleged that NASD has breached an implied contract. Plaintiffs could claim that the breach of contract claim against NASD was an implied in fact contract based upon the understanding that by applying for admission, NASD agreed to properly score the examination prior to announcing the results. In any event, distinguishing Plaintiffs' contract claim between an implied in fact and implied in law contract is generally a fact intensive analysis and requires a resolution of a factual dispute. *Girling Health Systems, Inc. v. U.S.*, 22 Cl.Ct. 66,

9

70 (1990). Such a fact intensive analysis is inappropriate for determination on a 12(b)(6) motion to dismiss prior to discovery.

NASD is subject to both implied in law and implied in fact contract claims. The Tucker Act would not apply to NASD. Jurisdiction under the Tucker Act extends only to governmental agencies and entities that receive appropriated funds. *L'Enfant Plaza Properties, Inc. v. U.S.*, 229 Ct.Cl. 278, 668 F.2d 1211, 1212 (1982). To avoid imposing an "unauthorized burden on the public treasury," jurisdiction under the Tucker Act does not extend to non-appropriated funds instrumentalities. *Id.* NASD, a corporation which generates hundreds of millions of dollars in revenues, upon information and belief, does not receive any appropriated federal funds. As a result, NASD would be subject to both an implied contract in fact or implied contract in law.

## **CONCLUSION**

The coding error was a ministerial mistake. No one exercised any policy judgments that would give rise to sovereign or absolute immunity. As a result, the SEC would not be granted sovereign immunity under the discretionary exceptions of the FTCA. Based on this analysis, the extension of absolute immunity to NASD and a third-party contractor, EDS, would be inappropriate. If the SEC cannot escape liability for these actions, then it is hard to imagine a scenario that would allow the NASD and EDS to do so.

As for Plaintiffs' implied contract claim, the SEC would be liable for this claim if the Court found it to a contract implied in fact. This is a factually intensive inquiry not suitable for disposition under Rule 12(b)(6). As a result, the SEC would not obtain dismissal of Plaintiffs' contract claim on this basis until the parties had been given the opportunity to seek discovery on the related issues.

*Respectfully submitted,*

 /s/ Gerald Martin
Gerald E. Martin, Esq. (TN Bar # 20193)
Laurel A. Johnston, Esq.
BARRETT, JOHNSTON & PARSLEY
217 Second Avenue North
Nashville, Tennessee 37201
Telephone: 615-244-2202
Facsimile: 615-252-3798


Herbert E. Milstein, Esq. (DC Bar # 26203)
Joseph P. Helm, III, Esq.
COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C.  20005
Telephone:  202-408-4600
Facsimile:   202-408-4699


Jonathan W. Cuneo, Esq. (DC Bar# 939389)
William H. Anderson, Esq. (DC Bar # 502380)
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: 202-789-3960
Facsimile: 202-789-1813

Stephen A. Weiss, Esq.
Michael S. Farkas, Esq.
SEEGER WEISS LLP
One William Street
New York, NY 10004
Telephone: 212-584-0700
Facsimile: 212-584-0799

*Liaison Counsel for Plaintiffs*

Steven N. Berk (DC Bar # 432870)
CHAVEZ & GERTLER LLP
1225 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: 202-232-7550

11

       Facsimile: 202-232-7556

       Steven A. Schwartz
       CHIMICLES & TIKELLIS LLP
       361 West Lancaster Avenue
       Haverford, PA 19041
       Telephone: 610-642-8500
       Facsimile: 610-649-3633

       ***Of Counsel***

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 10th day of May 2007, a copy of the foregoing <u>Plaintiffs' Supplemental Memorandum</u> was served on the following through the court's electronic filing system:

Donald Hall
Kaplan, Fox & Kilsheimer, LLP
805 Third Ave., 22nd Floor
New York, NY 10022

Richard M. Volin
Michael G. McLellan
Finkelstein, Thompson & Loughran
1050 30th Street, NW
Washington, DC 20007

James P. Karen
Joshua S. Roseman
Jones Day
2727 North Harwood Street
Dallas, TX 75201-1515

Joseph Tacopina
*Of-Counsel*
Arthur L. Aidala & Associates, P.C.
597 Fifth Avenue
New York, NY 10017

Michael L. Eckert
Eckert, Kost & Vocke, LLP
P.O. Box 1247
Rhinelander, WI 54501-1247

John Balestriere—VIA U.S. MAIL
Balestriere, PLLC
225 Broadway, Suite 2700
New York, NY 10007

James F. Rittinger
Satterlee Stephens, Burke & Burke, LLP
230 Park Avenue, 11th Floor
New York, NY 10169

Dennis E. Murray, Jr.
Murray & Murray Co., L.P.A.
111 E. Shoreline Drive
P.O. Box 19
Sandusky, OH 44871-0019

Scott E. Poynter
Emerson Poynter, LLP
2228 Cottondale Lane, Suite 100
Little Rock, AR 72202

F. Joseph Warin
William M. Jay
Jennifer J. Schulp
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036

Katherine Sadler
La Follette, Godfrey & Kahn
P.O. Box 2719
Madison, WI 53701-3719

Steven N. Berk
Cuneo, Gilbert & LaDuca, LLP
507 C Street, N.E.
Washington, DC 20002

| | |
|---|---|
| Fredric S. Fox<br>Kaplan, Fox & Kilsheimer, LLP<br>805 Third Avenue, 22nd Floor<br>New York, NY  10022 | Nancy M. Juda<br>Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP<br>1100 Connecticut Avenue, N.W.<br>Suite 730<br>Washington, DC  20036 |
| Jayson E. Blake<br>The Miller Law Firm, PC<br>950 W. University Drive, Suite 300<br>Rochester, MI 48307 | Michael T. Fantini<br>Berger & Montague, PC<br>1622 Locust Street<br>Philadelphia, PA 19103 |
| James E. Gauch<br>Jones Day<br>51 Louisiana Avenue<br>Washington, DC 20001 | L. Horton<br>Crisp, Boyd, Poff, Schubert & Burgess<br>P.O. Box 6297<br>2301 Moores Lane<br>Texarkana, TX 75505-6297 |
| Thomas C. McGraw<br>Gibson, Dunn & Crutcher<br>2100 McKinney Avenue, Suite 1100<br>Dallas, TX 74201 | Michael G. McLellan<br>Finkelstein, Thompson & Loughran<br>1050 30th Street NW<br>Washington, DC 20007 |
| Sherrie R. Savett<br>Berger & Montague<br>1622 Locust Street<br>Philadelphia, PA 19103 | Steven A. Schwartz<br>Chimicles & Tikellis, LLP<br>361 West Lancaster Avenue<br>Haverford, PA 19041 |
| Steven A. Skalet<br>Mehri & Skalet, PLLC<br>1250 Connecticut Avenue, NW, Suite 300<br>Washington, DC 20036-1609 | Philip J. Fowler – VIA U.S. MAIL<br>Gloor Law Group, LLC<br>225 West Wacker Drive, 17th Floor<br>Chicago, IL 60606 |

 /s/ Gerald E. Martin_____
 Gerald E. Martin
 BARRETT, JOHNSTON & PARSLEY

14